# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

### CIVIL NO. 1:05CV17
### (1:02CR77)

| | | |
|---|---|---|
| **HONGKEO CHANTHAPHATAENG,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM AND** |
| | ) | **ORDER** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Petitioner's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence by a person in federal custody filed January 26, 2006, and his supplement thereto filed February 22, 2006. No response is necessary from the Government.

## I. STANDARD OF REVIEW

A prisoner in federal custody may attack his conviction and sentence on the grounds that it is in violation of the Constitution or United States law,

was imposed without jurisdiction, exceeds the maximum penalty, or is otherwise subject to collateral attack. **28 U.S.C. § 2255.** However,

> [i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

**Rule 4, Rules Governing Section 2255 Proceedings for the United States District Courts.** The Court, having reviewed the record of criminal proceedings, enters summary dismissal for the reasons stated herein.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The Petitioner was charged originally with one count of possession with intent to distribute a quantity of methylenedioxymethamphetamine ("MDMA"), in violation of 21 U.S.C. § 841(a)(1). **Bill of Indictment, filed August 13, 2002.** However, during plea negotiations with the Government, the Petitioner and his attorney agreed to waive indictment and enter a guilty plea to a bill of information charging him with conspiracy to possess with intent to distribute a quantity of MDMA in violation of 21 U.S.C. §§ 846 and 841(a)(1)(C). **See, Waiver of Indictment, filed October 21, 2002; Bill of Information, filed October 21, 2002.**

On October 18, 2002, the Petitioner "in person and through counsel" entered into the above referenced plea agreement with the Government wherein he agreed to plead guilty to the charge contained in the bill of information. **Plea Agreement, filed October 18, 2002, at 1.** The plea agreement set forth the minimum and maximum sentences for the offense to which the Petitioner was entering a plea. The Petitioner faced a sentence of not more than 20 years or life imprisonment, a $1 million fine, or both, and a term of not less than three years of supervised release, unless the Government, at the time of sentencing, had filed notice of one or more felony drug offenses for which the Petitioner had been convicted. *Id.* If the Government filed such notice, the statutory penalties would increase. *Id.* The Petitioner also agreed that the amount of MDMA that was known or reasonably foreseeable to him was at least 400 but less than 700 kilograms of marijuana equivalency. *Id., at 2.* The Petitioner further agreed that if his gross offense level was at least 16 and he timely provided information to the Government concerning his involvement in the offense charged, the Government would recommend a two-level reduction in offense level pursuant to U.S.S.G. § 3E1.1 and an additional one-level reduction in offense level pursuant to U.S.S.G. § 3E1.1(b)(2). *Id.* The

Petitioner acknowledged his understanding that any reduction in offense level was ultimately for the Court's determination. *Id*. Additionally, the Petitioner agreed that he would be sentenced pursuant to the Guidelines as computed by the Probation Office and "if the Probation Office determines that a different offense level or Guideline not addressed in this agreement applies, and the Court finds the Probation Office is correct, then the Court will use that offense level or Guideline in determining the sentence." *Id*.

On October 29, 2002, the Petitioner appeared before the Magistrate Judge for a Rule 11 hearing and entered his guilty plea. **Rule 11 Inquiry and Order of Acceptance of Plea, filed October 29, 2002.** After being placed under oath by the Magistrate Judge, the Petitioner made the following representations: that he had reviewed the bill of information and the plea agreement with his attorney; that his mind was clear and his purpose was to enter his plea of guilty; that he understood the minimum and maximum punishments for the offense charged in the bill of information; he understood the elements of the offense the Government would be required to prove beyond a reasonable doubt if there had been a trial in the matter; that the Court would be required to consider the

5

applicable Sentencing Guidelines with limited right of departure; that by pleading guilty, he understood he was waiving his right to a jury trial; that he was pleading guilty because he was in fact guilty of the offense charged; that his plea of guilty was "voluntary and not the result of coercion, threats or promises other than those contained in the written plea agreement;" that he was "entirely satisfied with the services of his attorney;" that he had reviewed the Sentencing Guidelines with his attorney and understood how they may apply to his case; and that he had no questions or comments regarding the proceeding and asked the Court to accept his guilty plea. **See generally**, **Rule 11, supra.** As is the custom in this Court, the Magistrate Judge completed the Rule 11 form and recorded the Petitioner's answers to the questions; the Petitioner and his attorney then signed the Rule 11 form, and the Petitioner's guilty plea was accepted by the Court. **Id., at 9.**

Petitioner's presentence report shows that he completed the first semester of his tenth grade year before dropping out of school, but he later received his GED in January 2000. **Presentence Investigation Report, prepared May 5, 2003, at 11.** Although he admitted to experimenting with marijuana and MDMA, the Petitioner reported no history of mental or

emotional problems or drug abuse. *Id.*, **at 10-11.** The Petitioner assured

the Magistrate Judge at the Rule 11 hearing that his mind was clear and he

understood what he was doing. **Rule 11 Inquiry, at 2.**

On July 2, 2003, the Petitioner was sentenced to a term of 90 months

imprisonment. **Judgment in a Criminal Case, filed July 11, 2003.**[1] This

sentence was imposed after the Court granted the Government's motion

for downward departure which recommended a departure from offense

level/criminal history category 29/III to an offense level/criminal history

category of 27/III and a corresponding departure in range of imprisonment

from 108-135 months to 87-108 months. *See*, **Government's Motion for**

**Downward Departure, filed June 24, 2003, at 3.** Subsequently, the

Government filed a motion pursuant to Rule 35 detailing the nature and

extent of the Petitioner's post-sentencing substantial assistance and

requested that the Petitioner's sentence be reduced to 70 months

imprisonment. *See*, **Rule 35 Motion, filed January 16, 2004.** On January

22, 2004, the undersigned allowed the Government's motion and amended

the Petitioner's Judgment to reflect a sentence reduction to 70 months

---

[1] This Judgment was amended on August 26, 2003, to correct the
offense level and criminal history category. **Amended Judgment in a
Criminal Case, filed August 26, 2003.**

imprisonment. **Amended Judgment in a Criminal Case, filed January 22, 2004.** Petitioner did not file a notice of appeal but now contends he requested counsel to do so. ***See,* Supplemental Motion, ¶ 1.** Petitioner also alleges that the Court's finding of a four-level enhancement for his leadership role in the offense reflected in the original Judgment violates the Supreme Court's decisions in *Apprendi v. New* Jersey, 530 U.S. 466 (2000), *Blakely v. Washington State*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). ***See generally,* Memorandum in Support of Motion to Vacate, filed January 26, 2005.**

## III. DISCUSSION

The Petitioner primarily argues that the enhancements imposed by the Court violated his constitutional rights as recognized by the Supreme Court in the cases of *Apprendi, supra, Blakely, supra*, and *Booker, supra.* Petitioner also alleges that his attorney was ineffective for failure to object to the four-level enhancement, a clear violation of his constitutional rights, and that he failed to file a notice of appeal after being requested to do so by the Petitioner.

To the extent that the Petitioner raises grounds based on anything other than ineffective assistance of counsel or prosecutorial misconduct, he waived his right to raise such issues in a motion pursuant to § 2255 in his plea agreement. Based on the Petitioner's plea agreement, his signature on the Rule 11 Inquiry, the advice he received from the Court at the Rule 11 hearing, and his representations in open court during that hearing, the Court finds Petitioner made a knowing and voluntary waiver of the right to attack his conviction or sentence by a collateral proceeding such as a § 2255 motion. *See, United States v. Lemaster*, **403 F.3d 216, 220-21 (4th Cir. 2005) ("[W]e hold that a criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary. . . . [A] defendant's solemn declarations in open court affirming [a plea] agreement . . . carry a strong presumption of verity because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." (internal quotations and citations omitted));** *United States v. General*, **278 F.3d 389 (4th Cir. 2002);** *United States v. Brown*, **232 F.3d 399 (4th Cir. 2000);** *United States v. Hoyle*, **33 F.3d 415, 418 (4th Cir. 1994); see also,** *United States v. Blick*, **408 F.3d**

162, 173 (4th Cir. 2005) (holding that the Government as well as the defendant should receive the benefit of a binding plea agreement).

In considering Petitioner's claims that he has not received adequate assistance of counsel,

> [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 686 (1984). Unless a defendant makes both showings, his claim of ineffective assistance of counsel must fail. *Id.* Thus, a defendant must show that counsel's performance fell below objective standards of reasonableness, and, that but for counsel's conduct, there was a reasonable probability the result would have been different. *Id.*, at 688; *Hill v. Lockhart*, 474 U.S. 52 (1985); *Fields v. Attorney Gen.*, 956 F.2d 1290 (4th Cir. 1992) (In order to obtain relief from a guilty plea on the basis of ineffective assistance of counsel, a defendant must show both that counsel was incompetent and but for that incompetence, he would not have pled guilty). If the defendant

fails to make the first showing, there is no need to consider the second.

***Strickland, supra.***

Petitioner alleges that "he told his defense counsel to file notice of appeal in [order] to be able to secure any appealable issues, but counsel failed to file notice of appeal as requested." **Supplemental Motion, ¶ 1.** The Petitioner has not included any affidavit or other supporting evidence as to when, where, or under what circumstances the request was made; he offers only a conclusory allegation of his attorney's failure to file the appeal.

> In order to establish a Sixth Amendment violation based on counsel's failure to appeal, [the Petitioner] must prove that (1) counsel was ineffective and (2) but for counsel's ineffectiveness, an appeal would have been filed.

***United States v. Witherspoon***, 231 F.3d 923, 926 (4th Cir. 2000).

Here, the Petitioner's plea agreement contained a waiver of his right to a direct appeal on any grounds other than ineffective assistance of counsel or prosecutorial misconduct. There is no evidence of prosecutorial misconduct and the Fourth Circuit Court of Appeals will not consider ineffective assistance of counsel on direct appeal unless the record shows conclusively that effective assistance was not rendered. ***United States v. Freeman***, 11 F. App'x 192 (4th Cir. 2001) (citing ***United States v. King***, 119 F.3d 290, 295 (4th Cir. 1997)). That Court has relegated such claims,

11

in all but the most obvious situations, to motions pursuant to § 2255. *Id.* During the Rule 11 inquiry, the Petitioner openly acknowledged that he understood he was waiving his right to direct appeal. And, at the conclusion of the sentencing hearing, the undersigned advised the Petitioner of his limited right to appeal and the Petitioner stated he understood that right. **Transcript of Sentencing Hearing, filed October 23, 2003, at 14.** The Petitioner "would have been naive indeed to suppose that he could have his cake (*vis., significantly* reduced jail time) and eat it too (*vis.,* an appeal)." **United States v. Ciampi, 419 F.3d 20, 27 (1ˢᵗ Cir. 2005), *cert. denied*, 126 S. Ct. 2906 (2006) (emphasis added).** Thus, a direct appeal in this case would have been dismissed because of the waiver and counsel was, therefore, not ineffective.

> The Sixth Amendment requires counsel to consult with the defendant concerning whether to appeal when counsel has reason to believe "either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."

**Witherspoon, supra (quoting Rose v. Flores-Ortega, 528 U.S. 470, 480 (2000)).** In this case, a rational defendant would not have wanted to appeal because he had already waived all of his appeal rights except the

one which the Fourth Circuit, under the evidence in this case and based on prior precedent, would not entertain on direct appeal. In fact, this case falls within the parameters of the example provided by the Supreme Court in *Roe*: a defendant who negotiated and received a plea agreement with the Government which resulted in a much lower sentence than faced under the statute and who expressed both to counsel and the Court his satisfaction with that agreement and the performance of counsel. *Id.; see also*, **Rule 11 Inquiry**, *supra.* If it is indeed true that Petitioner requested his trial counsel to file an appeal, it is also true that no "nonfrivolous grounds for appeal" existed and the Fourth Circuit would not have considered Petitioner's ineffective assistance claims on direct appeal.

Because Petitioner has failed to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," the second prong of *Strickland* need not be reached.

The Petitioner also claims he is entitled to relief based on the *Apprendi, Blakely* and *Booker* decisions. The Supreme Court held in *Apprendi* that other than a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be

submitted to the jury and proven beyond a reasonable doubt. Besides the fact that the Petitioner entered into a guilty plea, he is mistaken that *Apprendi* would apply to his case in any event because his sentence is not beyond the prescribed statutory maximum. *See, e.g., United States v. Bradford*, 7 F. App'x 222, 223 n.* (4th Cir. 2001) (citing *United States v. White*, 238 F.3d 537, 542 (4th Cir. 2001)).

In *Blakely*, the Supreme Court held that Washington State's statutory sentencing scheme violated *Apprendi* because the sentencing court used aggravating factors, to which the defendant had not stipulated in his plea agreement, to enhance the defendant's sentence above the sentencing guideline range. However, *Blakely* does not apply retroactively to convictions, like the Petitioner's, that were final at the time that case was decided. *United States v. Price*, 400 F.3d 844 (10th Cir. 2005); *Varela v. United States*, 400 F.3d 864 (11th Cir.), *cert. denied*, 126 S. Ct. 312 (2005); *Cooper-Smith v. Palmateer*, 397 F.3d 1236 (9th Cir.), *cert. denied*, 126 S. Ct. 442 (2005); *Green v. United States*, 397 F.3d 101, 103 (2d Cir. 2005); *United States v. Marshall*, 117 F. App'x 269 (4th Cir. 2004). The Petitioner's conviction became final in January 2004, prior to

the *Blakely* decision in June 2004, and could not be retroactively applied in any event.

Petitioner's claim for relief pursuant to *Booker* is rejected as well. In *Booker*, the Supreme Court held that the United States Sentencing Guidelines, as a mandatory sentencing procedure, are unconstitutional but that they may be used as an advisory guide by sentencing courts. The Fourth Circuit, as well as every circuit court which has addressed the issue of whether *Booker* may be applied retroactively to cases on collateral review, has held that *Booker* is not retroactive. ***United States v. Morris**, 429 F.3d 65 (4th Cir. 2005) (Although **Booker** is a new rule of constitutional law, it is not a watershed rule and therefore does not apply retroactively to cases on collateral review.); **United States v. Fowler**, 133 F. A'ppx 922 (4th Cir. 2005) ("Neither **Booker** nor **Blakely** announced a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review."); **United States v. Cruz**, 423 F.3d 1119 (9th Cir. 2005); **United States v. Bellamy**, 411 F.3d 1182 (10th Cir. 2005); **Lloyd v. United States**, 407 F.3d 608 (3d Cir.), **cert. denied**, 126 S. Ct. 288 (2005); **Guzman v. United States**, 404 F.3d 139 (2d Cir.), **cert. denied**, 126 S. Ct. 731 (2005); **Humphress v. United***

*States*, 398 F.3d 855 (6th Cir.), *cert. denied*, 126 S. Ct. 199 (2005);

*McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir.), *cert. denied*,

125 S. Ct. 2559 (2005) ("We conclude, then, that *Booker* does not

apply retroactively to criminal cases that became final before its

release on January 12, 2005."); *Green, supra*; *In re Anderson*, 396 F.3d

1336, 1339 (11th Cir. 2005).

Lastly, Petitioner contends that he qualified for safety valve relief

pursuant to U.S.S.G. § 5C1.2. **Petitioner's Memorandum, at 13.** This

contention is likewise without merit. The first requirement for safety valve

eligibility pursuant to § 5C1.2 and 18 U.S.C. §§ 3553(f)(1) - (5) is that "the

defendant does not have more than 1 criminal history point as determined

under the sentencing guidelines[.]" Petitioner's presentence report (to

which he filed no objections) shows a criminal history category of 3.

**Presentence Investigation Report, at 8.**


## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Petitioner's motion to

vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is

**DENIED.** A Judgment is filed herewith.

Signed: August 25, 2006

Lacy H. Thornburg
United States District Judge